LEE v. UNITED STATES.
LEVENTHAL v. UNITED STATES.
Nos. 10483, 10484.

Circuit Court of Appeals, Sixth Circuit.
March 29, 1948.

Dan B. Cull, of Cleveland, Ohio (Dan B. Cull, of Cleveland, Ohio, on the brief), for appellants.

William C. Graves, of Cleveland, Ohio (Don C. Miller, William C. Graves and Frank Steel, all of Cleveland, Ohio, on the brief), for appellee.

Before MARTIN, McALLISTER and MILLER, Circuit Judges.

MARTIN, Circuit Judge.

Albert Singer of Cleveland, Ohio, when jointly indicted, in separate cases, with each of his two sons-in-law, Henry Lee and Raymond L. Leventhal, had been engaged for more than twenty years in a proprietary capacity in steel jobbing and warehousing. He conducted his business under the name, "Singer Steel Company." Both sons-in-law were honorably discharged service men: Lee having been in the Army four years, three of which were spent in overseas service; and Leventhal having served actively with the Navy in the Mediterranean Theater of War and in the Pacific.

Upon their return to civilian life, Lee and Leventhal were employed by their father-in-law, Singer, as salesmen on a commission basis. Each had a drawing account of $75 per week. Several months after becoming so employed, each asked and received permission from Singer to obtain a veteran's priority certificate from the War Assets Administration for the pur-

chase of steel with which to start a business of his own, while continuing in the employ of the father-in-law. Here, their troubles began, with the result that they have been criminally convicted, fined, and sentenced to jail.

One of the general objectives declared in the Surplus Property Act of 1944 was "to afford returning veterans an opportunity to establish themselves as proprietors of agricultural, business, and professional enterprises." U.S.C.A., Title 50 Appendix, Section 1611(f). To that end, by amendment of the Act, the Administrator was directed to prescribe regulations "to aid veterans in the acquisition of surplus property, in appropriate quantities and types, to enable them to establish and maintain their own small business, professional, or agricultural enterprises." 50 U.S.C.A.Appendix, § 1625. The Act expressly provided that disposals of surplus property (except real estate) to veterans should be given priority over all other disposals, except those to Government agencies.

Two indictments were returned on the same day: one in three counts charging Singer and Lee and the other in two counts charging Singer and Leventhal with wilfully making and causing to be made, in relation to separately specified transactions, false and fraudulent statements and representations to the War Assets Administration, an agency of the United States. Each count of the indictment charged the violation of Title 18, Section 80, U.S.C.A., which, so far as material here, provides that "whoever shall knowingly and willfully falsify or conceal or cover up by any trick, scheme, or device a material fact, or make or cause to be made any false or fraudulent statements or representations, * * * in any matter within the jurisdiction of any department or agency of the United States" shall be punished as provided.

Each count of both indictments charged the defendants with knowingly making or causing to be made false and fictitious statements "in violation of the Surplus Property Act of 1944 and as amended May 3, 1946, by Public Law No. 375, Section 16, and regulations adopted thereunder by the Administrator of the War Assets Adminis-

tration, such regulations being effective May 3, 1946, and as amended, being Section 8302-1(4), Section 8302-1(5), and Section 8302-5." Each count charged that the defendants purchased from the War Assets Administration on specified dates certain steel for stated amounts on the priority certificate of the veteran defendant in each case, on statements and representations that he was the owner of the metal purchased and was not acting as an agent for any one else but was purchasing for himself in compliance with the prescribed regulations; whereas, in fact, the defendants knew such statements and representations to be false and untrue, in that each purchase was made or caused to be made on behalf of the civilian, Singer, with funds advanced by him.

The defendants waived trial by jury. The two cases were consolidated, and were also consolidated for trial purposes with a similar case against Albert Singer and his brother, Jerome Singer. Upon conclusion of the trial of the consolidated cases, at which the defendants testified frankly, the court directed dismissal of the charges against Albert and Jerome Singer; but found the defendants Lee and Leventhal guilty on all counts of the respective indictments against them, imposed upon each of them a fine of $3,500 and costs, and sentenced each to imprisonment for a term of four months. Lee and Leventhal have appealed.

We find no material conflict in the evidence. Government and defense attorneys agree that the facts are practically undisputed, and the trial court considered the ultimate issue for decision a question of law, pure and simple, on a "definite set of facts." The three counts against Lee and Singer cover purchases from the War Assets Administration, on priority certificates, made by Lee on August 8, 1946, in the amount of $2,164.26; on September 12, 1946, in the amount of $1,950; and on October 9, 1946, in the amount of $1,170. The two transactions covered by the indictment against Singer and Leventhal involve purchases, on priority certificates, made by Leventhal on August 8, 1946, in the amount of $2,440; and on September 12, 1946, in the amount of $3,604.45.

Before Lee and Leventhal filed their respective applications for veteran's priority certificates, Singer agreed to advance or lend them the money with which to make the purchases of steel, and to furnish space in his warehouse for storage of the commodity. The veterans paid for their purchases by their own personal checks, but Singer supplied them with the necessary funds. Leventhal, however, on his first attempt to purchase steel from the War Assets Administration, sought no loan from Singer, but expended his own money. Though the steel had been allocated to him, it was never delivered; and he was not reimbursed by the Government for many months. This particular transaction is not included in the indictment; but it should be given consideration in showing that, at the outset, Leventhal was certainly acting for himself and not as an agent for Singer in purchasing steel.

The steel bought by the veterans was shipped to Singer's warehouse, where it was stored in separate compartments for the respective accounts of Lee and Leventhal. Both young men made repeated efforts to sell the steel which they had purchased; but, after being unable to do so, they called upon Singer to sell it for them, which he did. They sold their steel to Singer at cost price. He resold it at a profit. After deducting warehousing charges and other expenses of handling, Singer, on all five sales covered by the two indictments, paid the veterans approximately sixty-five per cent of the profits on each transaction. In one instance, all the profit made was credited to Lee, because he, himself, had sold the material. Lee used the trade name "Alee Steel Company." Leventhal chose "AAA Steel Company" as the trade name for his business enterprise when applying for a veteran's priority certificate. We find no fraud or deception practiced by the veterans in the unconcealed use of these trade names in their individual transactions.

We are unable to follow the conclusions of the district court that in each instance the use of the names "Alee Steel Company" and "AAA Steel Company" was a subterfuge to obtain a priority, and that the evidence shows that neither veteran was engaged in his own small business enterprise, as contemplated and defined in the regulations of the War Assets Administration; or that "these veterans used their service records in order to enable them to enhance their own fortunes and to make money on steel which they purchased or were able to purchase as a result of the misrepresentations made." There is no evidence that the use of the trade names by Lee and Leventhal influenced the issuance of priority certificates or the sales to the veterans by the War Assets Administration. The shipping instructions given by appellant Lee in connection with his first purchase made no mention of "Alee Steel Company," but directed that the steel should be shipped to "Henry Lee, 2100 Random Road, Cleveland, Ohio."

Nor, on this record, can we concur in the comment of the district court that these veterans unlawfully used their service records to enhance their own fortunes. A stated purpose of the Act is that the War Assets Administrator should prescribe regulations *to aid veterans in the acquisition of surplus property* to enable them to establish and maintain their own *small business enterprises*. Certainly, these two young men were not engaging in *big business,* in purchasing the small quantities of steel which they acquired from the Government. They were well within the declared purposes of the Act.

There are no inhibitions against veterans obtaining the assistance of partners without war service records as participants in their small business enterprises. It is a reasonable assumption that Congress had in mind that veterans might need the financial assistance of those who had not served in war, and also the aid of such civilians in handling and warehousing commodities purchased by veterans entitled to the priority benefits conferred by the Act.

The testimony of F.B.I. Agent Brown reveals a frank disclosure by both veterans of the manner in which they had transacted the business upon which their indictments were based. They disclosed to him that their honest purpose was to engage in independent business in addition to their regular employment as commission salesmen for Singer Steel Company; that each in-

tended to sell to his own customers the priority steel purchased by him; that Singer agreed to lend them the money so that they might engage in their own business enterprises "on the side"; and that he did not advance the money to them for purchases on his own behalf.

It is indisputable on the record that, in all cases in which Singer Steel Company sold the priority steel invoiced to the Singer company by the appellants, each of the veterans received more than fifty per cent of all net profits from the transactions. The consequence of this established fact is that the statements made by the veterans in their applications for priorities, as well as in their purchase orders, did not constitute false statements knowingly and wilfully made in violation of Title 18, Section 80, U.S.C.A., inasmuch as the veterans classified themselves within the literal requirements of Sections 8302-1(4) and 8302-1(5) of the regulations promulgated by the War Assets Administration.

Section 8302-1(4) of the regulations thus defines "own business": " 'Own'· business or professional or agricultural enterprise of a veteran means one of which more than fifty (50) per cent of the invested capital thereof is beneficially, and· not merely nominally or formally, owned by a veteran or veterans, *or one of which more than fifty (50) per cent of the net income thereof beneficially, and not merely nominally or formally, accrues to a veteran or veterans.* * * *" [Italics supplied.] In Section 8302-1(5) of the regulations, "small business" is defined as meaning a veteran's own small business "and may include any commercial or industrial enterprise, or group of enterprises under common ownership or control, which does not at the date of purchase of surplus property hereunder have more than 500 employees."

■ The language of the regulations is clear and simple; and, in the light of the foregoing provisions, should by no strained construction be interpreted to mean that a veteran might not procure non-veteran partners or associates in his business enterprise, provided such outsiders in reality own less than fifty per cent of the invested capital; or, *as directly applicable here,* provided that more than fifty per cent of the net income of the business beneficially, and not merely nominally or formally, accrued to the veteran.

■ The printed language of the application blanks which appellants were required to sign was not only contradictory in certain parts, but did not conform to the rights granted veterans to purchase surplus Government property under the prescribed conditions. Indeed, the Supervisor of the certification unit of the Cleveland Office of War Assets Administration, a Government witness, admitted that the prescribed paragraph 18 of the application which each appellant signed, to the effect that the purchase was not made for resale, was not intended to apply, because inconsistent, and "was amended by the appendix," being "later dropped entirely from the new application form." The witness stated that an appendix, also signed by appellants, was attached to each application "to correct the fallacy in paragraph 18"; that the appendix, as printed, however, did not clarify the paragraph, but was actually in conflict with it. He testified that the appendix was intended "to take the place of paragraph 18, in that it permitted resale" by the veteran of the surplus property purchased by him.

The certification blanks are obviously contradictory and confusing. It would be illogical to infer from them that appellants understandingly certified that they were not purchasing for resale surplus property of the United States which the law permitted them to resell. It cannot reasonably be inferred that, in the promulgation of his regulations, the administrator intended to curtail rights which Congress had granted veterans by proscribing in fine print their resale privileges. It would be an unreasonable assumption that an avuncular Government would expect its returning service men to purchase for use as souvenirs such Government property as the steel acquired by Lee and Leventhal. Souvenir German helmets or Japanese samurai swords would doubtless be much more alluring to our honorably discharged fighting men.

The judgments of sentence and conviction are reversed and the cases are directed to be dismissed.